Argued June 5, reversed and remanded September 28, 1972

# METRO INVESTMENT CORPORATION, Appellant, v. PORTLAND ROAD LUMBER YARD, INC., Respondent.

501 P2d 312

*Malcolm L. Brand,* Salem, argued the cause for appellant.

*Merlin Estep, Jr.,* Salem, argued the cause for respondent.

DENECKE, J.

The sole issue is the application of ORS 72.-6070 (3)(a) of the Uniform Commercial Code—Sales, which provides that a buyer accepting defective goods must give the seller timely notice of the defect or be barred.

In the fall of 1966 the plaintiff buyer purchased siding from the defendant seller. The seller warranted the performance of the siding. The siding was applied to an apartment building being constructed by the buyer. The buyer complained to the seller that the siding was buckling and on March 1, 1967, the parties met to discuss the problem. They agreed that cedar siding would be placed over the corrugated siding supplied by the seller at seller's cost. The cedar siding was applied in the summer of 1967.

At the March meeting the parties observed that some of the smooth siding also was buckled, but not as seriously as the corrugated siding. The parties agreed that they would do nothing about this condition at

(Holman, J., did not participate in this decision.)

present in the hope that the buckling would subside in the summer. The siding did improve in the summer but buckled again in the winters of 1967-1968 and 1968-1969.

The buyer did not recontact the seller about the siding from the summer or fall of 1967 until the late winter or early spring of 1969. The buyer's witness testified that no contact was made because they were busy, particularly because during this period one of buyer's principals died. After the complaint was renewed in 1969, seller offered to replace a number of pieces of siding; however, in return seller wanted a full release, which the buyer was unwilling to give.

The principal issue at trial was whether the buckling of the siding was caused by defects in the siding furnished by seller or defective application of the siding by the buyer. The trial court, sitting without a jury, did not decide that issue, however, but found for the seller upon the ground that "the notice of breach of warranty given in 1969 was not given within a 'reasonable time' as required by ORS 72.6070."

ORS 72.6070 (3)(a) provides:

"The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; * * *."

The Uniform Sales Act had a provision similarly worded.[1]

Comment 4 to the Code section states:

"The time of notification is to be determined by applying commercial standards to a merchant

---

[1] A different interpretation, however, in some respects not here applicable is urged for the Code provision. Clarizo v. Spada Distributing Co., Inc., 231 Or 516, 524-525, 373 P2d 689 (1962).

buyer. 'A reasonable time' for notification from a retail consumer is to be judged by different standards so that in his case it will be extended, for the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy.

"The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under ORS 72.6070 must include a clear statement of all the objections that will be relied on by the buyer, as under the section covering statements of defects upon rejection (ORS 72.6050). Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under ORS 72.1010 to 72.7250 need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation."

At common law there was confusion about the effect of the acceptance of defective goods. Some courts held acceptance terminated certain rights the buyer would otherwise have had against the seller. Others held that these rights were not terminated by acceptance if the buyer did not intend to forego these rights by acceptance. The dilemma was caused by the desire to give finality to transactions in which the goods were accepted but also to accommodate a buyer who desperately needed the goods immediately despite their defective quality.

This dilemma was solved in the Sales Act by providing that acceptance of the goods did not bar the buyer from recovering damages for defective goods; however, the interest in the finality of transactions

was protected by requiring that the buyer had to give notice of breach within a reasonable time after acceptance or be barred from any remedy. 3 Williston, Sales (rev ed), 37, § 484a; Vold, Law of Sales (2d ed), 460-461.

More recently some courts have found more practical reasons for the notice requirement. "Wagner [the seller] correctly points out that the purpose of the statutory requirement of notice is to enable the seller to minimize any damages or correct the defect." *Wagner Tractor, Inc. v. Shields*, 381 F2d 441 (9th Cir 1967) (applying Oregon law).

"The purpose of a notice of the breach of warranty, which is to permit the seller to investigate the claim and to protect himself, was adequately fulfilled." *Hellenbrand v. Bowar*, 16 Wis2d 264, 270, 114 NW2d 418 (1962).

The official comments, as above quoted, state that the notice is "to let the seller know that the transaction is still troublesome and must be watched."

For any of these stated purposes the notice in this case was sufficient.

At trial the parties stipulated "that notice was given of the alleged defect in December, 1966, or the first two months of 1967 and a meeting * * * was held on or about March 1, 1967." This notice was adequate to inform the seller that the buyer's acceptance did not signify that the buyer found the goods free from defect; it indicated the transaction should be watched and it gave the seller an opportunity to investigate and minimize its damage.

■■ The failure of the buyer to renew its complaint for two years can create an inference for the trier of

fact that the buyer did not consider the alleged defects to be substantial or did not consider that the buckling was due to faulty materials; however, the failure to make a prompt renewal of the claim does not act as a statute of limitations and inflexibly cut off the buyer's right to assert its claim. The initial notice satisfies the statute. The tardiness of the renewal of the complaint is evidence to be considered in deciding liability and damages.

■ Ordinarily, whether or not the notice was timely is a question of fact for the trier of fact and a finding on such issue will not be disturbed on appeal. However, when the facts are undisputed, as they are here, the appellate court must rule as a matter of law that the notice was or was not timely. *San Antonio v. Warwick Club Ginger Ale Co.*, 104 RI 700, 248 A2d 778, 782 (1968); *Nat'l Cont. Corp. v. Regal Cor. Box Co.*, 383 Pa 499, 119 A2d 270, 273 (1956).

Reversed and remanded for new trial.