J-S29003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DANIEL W. DURAND AND CAREY C. DURAND | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 239 MDA 2023 |
| JR BEARD, LLC | : | |

Appeal from the Judgment Entered January 11, 2023
In the Court of Common Pleas of York County
Civil Division at No. 2022-SU-000040

BEFORE:   MURRAY, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:          **FILED SEPTEMBER 29, 2023**

Daniel W. and Carey C. Durand (Appellants), appeal from the entry of summary judgment in favor of JR Beard, LLC (JR Beard), in this breach of implied contract action.  We affirm.

The trial court detailed the case history:

> On March 15, 2021, [Appellants] hired JR Beard [] to complete concrete patio work at their home around their in-ground pool.  [Appellants] had requested a quote from [JR Beard] for the work to be completed, and received a bid for $8,500[], accepting it that same day.  The installation was done on or around April 2021, but [Appellants] were dissatisfied with the work.  [JR Beard] returned to do additional work, and no other payments were rendered or received.
>
> On May 24, 2021, JR Beard [] filed a civil complaint against Carey Durand ("C. Durand") with the Magisterial District Court [MDJ Action], seeking $5,200 together with costs.  Def.'s Mot. for

---

[*] Retired Senior Judge assigned to the Superior Court.

Summ. J. ¶ 6. In his complaint, Beard alleged that C. Durand confirmed a bid for $8,500 with him for the concrete patio but only paid him $4,000 of the agreed upon amount. *Id.* at 3-5. The complaint also stated that an additional $700 worth of concrete [work was performed, …] and after the job was completed, [JR] Beard returned to C. Durand's property three times to address concerns, but that each time his requests for payment for these visits were denied because C. Durand "had more concerns." *Id.* ¶ 4. Def.'s Br. in Support at 2. In the MDJ action, then-defendant C. Durand did not file a cross-complaint, and thereafter[,] on June 30, 2021, judgment was entered in favor of C. Durand, with no monetary award given. *Id.* at 8. It is also undisputed that no appeal was taken from that award by either party. Def.'s Reply Br. at 2.

A little over five months later, on January 7, 2022, [Appellants] filed a [c]omplaint in the York County Court of Common Pleas alleging [JR] Beard failed to correct issues with [the] concrete patio work as well as other work performed, allegedly resulting in worse damage to the patio. Def.'s Mot. for Summ. J. 11-15. [Appellants] claim [JR] Beard demanded full payment, including an additional amount for extra concrete before he would make any further efforts to correct the issue(s). *Id.* at 16. They also received estimates to repair the issues that allegedly remained with the concrete pool deck, and [] those estimates totaled $39,769.61[.] *Id.*

Trial Court Opinion, 1/11/23, at 1-3 (footnotes and italics omitted, citations and some capitalization modified).

On October 20, 2022, JR Beard filed a motion for summary judgment. Appellants filed a response. On January 10, 2023, the trial court heard oral argument. By order entered January 11, 2023, the trial court granted JR Beard's motion for summary judgment. Appellants timely appealed.[1]

_____

[1] Appellants have complied with Pa.R.A.P. 1925(b), and on March 9, 2023, the trial court issued a Rule 1925(a) opinion adopting its January 11, 2023, opinion.

Appellants raise the following issues:

A. Whether the trial court erred by granting [JR Beard's m]otion for [s]ummary [j]udgment on the basis that the doctrine of *res judicata* applied in this matter[?]

B. Whether the trial court erred by concluding that the Appellants had to preserve their claim and failed to do so by not filing an appeal of the [MDJ Action, which was] in [their] favor with no monetary award, not filing a counterclaim at the [MDJ Action] by reducing [the] damages to fall within the jurisdictional requirements of [MDJ Actions,] or filing a counterclaim [in the MDJ Action] that exceeded the [MDJ Action's jurisdictional limitations] and challenging jurisdiction[?]

Appellants' Brief at 4.

Our standard of review from the grant of summary judgment is well-settled:

[We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. … Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Thompson v. Ginkel***, 95 A.3d 900, 904 (Pa. Super. 2014) (citations omitted).

Because Appellants' issues are related, we address them together. Appellants contend the trial court erroneously concluded their complaint was

barred by *res judicata*. Appellants' Brief at 8-15.[2]  Appellants also maintain

the trial court erred in concluding they had recourse available to them in the

MDJ Action.  *Id.* at 14.  Appellants assert the MDJ did not have the authority

to hear their claims because the amount in controversy exceeded jurisdictional

limits.  *Id.* at 16.  We are not persuaded by Appellants' arguments.

The following principles inform our review.  The doctrine of *res judicata*

is intended "to foreclose repetitious litigation by barring parties from re-

litigating a matter that was previously litigated or could have been litigated."

***Wilmington Trust Nat'l Assoc. v. Unknown Heirs***, 219 A.3d 1173, 1179

(Pa. Super. 2019).  Four common elements must exist before the doctrine

_____

[2] While the MDJ Action was filed against Carey Durand only, under the doctrine of r*es judicata*, "a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the parties or their privies, on the same cause of action."  ***A.C. Elfman & Sons, Inc. v. Clime***, 513 A.2d 488 (Pa. Super. 1986) (citations omitted).  Appellants do not deny they are in privity.  ***See*** Appellants' Brief at 8-18.  Rather, they appear to argue that *res judicata* does not apply because there is not identity of parties.  Appellants' Brief at 11 (referencing "switching of the parties").  Appellants emphasize they were defendants in the MDJ Action, and plaintiffs in the instant case.  ***Id.*** Appellants have waived this claim, as they failed to raise it in their response to summary judgment and Rule 1925(b) statement.  ***See*** Appellants' Brief in Opposition to Summary Judgment, 11/21/22, at 2-9 (unnumbered); Concise Statement of Errors Complained of on Appeal, 3/8/23, at 1-2 (unnumbered). Issues cannot be raised for the first time on appeal.  ***See Satiro v. Maninno***, 237 A.3d 1145, 1150-51 (Pa. Super. 2020) ("Pa.R.A.P. 1925(b) is not satisfied by simply filing any statement.  Rather, the statement must … permit the trial court to understand the specific issues being raised on appeal.); ***Harber Philadelphia Ctr. City Office Ltd. v. LPCI Ltd. P'ship***, 764 A.2d 1100, 1105 (Pa. Super. 2000) (citation omitted) (A non-moving party's "failure to raise grounds for relief in the trial court as a basis upon which to deny summary judgment waives those grounds on appeal."); Pa.R.A.P. 302.

applies. There must be (1) identity of issues; (2) identity of causes of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. *Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.*, 902 A.2d 366, 378 n.9 (Pa. 2006). The trial court "may consider whether the factual allegations of both actions are the same, whether the same evidence is necessary to prove each action and whether both actions seek compensation for the same damages." *Dempsey v. Cessna Aircraft Co.*, 653 A.2d 679, 681 (Pa. Super. 1995) (*en banc*) (citation omitted). In addition, the prior action must have resulted in a final judgment on the merits. *Id.* at 680-81.

Here, Appellants do not dispute the identity of issues and causes of actions. Appellants' Brief at 8-18. The crux of their argument is that the prior MDJ Action did not result in final judgment on the merits because "Appellants did not have the ability to file a [counterclaim] in the total amount of their loss and damages, to preclude them from filing [the instant] suit." *Id.* at 12. Appellants assert they were not required "to lower their requested relief to avail themselves of the jurisdiction of the [MDJ] or to appeal a judgment rendered in their favor, just to obtain the right to file their claims before" the Court of Common Pleas. *Id.* at 15. Appellants maintain that because their damages exceeded $12,000.00, they were "statutorily precluded from previously raising any of their claims" in the MDJ Action. *Id.* at 16.

The trial court disagreed, explaining:

[Appellants] correctly state that MDJs have the jurisdiction and authority to hear civil claims where the amount in controversy does not exceed $12,000 pursuant to [] 42 Pa.C.S.A. § 1515(3)(i)-(iii). However, in order to properly address the civil complaint that stems from the same action but does exceed $12,000, the issue must be preserved, or the final judgment appealed.[4] As [] JR Beard states in his brief, a counterclaim or complaint by [Appellants] in excess of $12,000 would have allowed the MDJ the option to transfer the case to the Court of Common Pleas anyway, and [the trial court] agree[s]. Procedurally and under § 1515, asserting a cross-complaint was the necessary action to preserve [their] claim.

[4] The fact that the MDJ found in favor of [Appellants] does not necessarily preclude [them] from filing an appeal, since no monetary award was made on behalf of either party. And, as the pleadings show, [Appellants] knew about the additional costs **during** the MDJ Action.

Specifically [regarding] Magisterial District Court actions, Pa.R.Civ.P.M.D.J. 315 states that "the defendant, by filling a complaint... may assert in the case any claim against the plaintiff that is within the jurisdiction of a magisterial district judge." Section B then states that "the rules governing the form, processing, and service of a plaintiff's complaint **shall apply also to the defendant's complaint**." (emphasis added). Thus, a defendant who files a cross-complaint stands in the shoes of a plaintiff [regarding] a cross-complaint. And, by filing a cross-complaint against then[-]plaintiff [JR] Beard during the MDJ proceeding, [Appellants] would have become the plaintiff in that new claim. This switch of party positions through a cross-complaint would have afforded [Appellants] the ability to then apply § 1515(3)(iii), which states: "A plaintiff may waive a portion of her claim of more than $12,000 so as to bring the matter within the monetary jurisdiction of a magisterial district judge. Such waiver shall be revoked automatically if the defendant appeals the final order of the magisterial district judge or when the judgment is set aside upon *certiorari*." Or, as noted earlier, the MDJ could

have transferred the case to the Court of Common Pleas.[3] Thus, [Appellants] did not properly preserve their claim at the MDJ proceeding, precluding them now under the doctrine of *res judicata* from bringing the claim based on the same issues already litigated by a court of competent jurisdiction.

Alternatively, [Appellants] could have preserved their claims against [JR] Beard by appealing the MDJ's decision to the Court of Common Pleas. However, they did not[,] which allowed the judgment of the MDJ to become final. This finality again implicates the doctrine of *res judicata* and bars [Appellants'] instant action.

Trial Court Opinion, 1/11/23, at 4-6 (footnote 4 and bold emphasis in original, one footnote added, some capitalization and punctuation altered).

The record and law support the trial court's analysis. In **A.C. Elfman**, this Court held, "where the doctrine of *res judicata* is otherwise applicable, its invocation will not be precluded or impaired because the prior judgment was entered in [an MDJ Action]." **A.C. Elfman**, 513 A.2d at 490 (citations omitted). "The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the parties had an opportunity to appear and assert their rights." **In re Jones and Laughlin Steel Corp.**, 477 A.2d 527, 531 (Pa. Super. 1984). A plaintiff cannot split causes of action that formed the basis of their defense in the MDJ Action and now assert them in the instant action. **Kessler v. Old Guard Mut. Ins. Co.**,

---

[3] The record reflects that there was an approximately 45-day period between the time JR Beard filed the MDJ Action and the date it was heard. There was nothing preventing Appellants from filing their action in the Court of Common Pleas during this period.

570 A.2d 569, 573 (Pa. Super. 1990) ("The law does not permit the owner of a single or entire cause of action to divide or split that cause so as to make it the subject of several actions.").

While this Court has not directly addressed Appellants' argument that they were precluded from bringing their claims before the MDJ because of monetary limits, trial courts in Pennsylvania at both the state and federal level have rejected this argument.[4] In **Crosley v. Agway, Inc.**, 656 F.Supp. 662 (W.D. Pa. 1987), the federal district court rejected the plaintiffs' claim that they did not have a full and fair opportunity to have their counterclaim heard before the MDJ because the disputed damages exceeded the jurisdictional limit. **Crosley**, 656 F.Supp. at 663-64. The federal district court found the MDJ "necessarily" had to have rejected this defense "in order to find in favor [of the defendant] for the full amount." **Id.** at 664. It further concluded plaintiffs had a full and fair opportunity to litigate their claims where they "appear[ed] and their defense was heard by the [MDJ] and necessarily rejected." **Id.**

---

[4] "Decisions of the Court[s] of Common Pleas are not binding precedent," but "may be considered for their persuasive authority." **Darrow v. PPL Electric Utilities Corp.**, 266 A.3d 1105, 1112 n.6 (Pa. Super. 2021) (citation omitted). "While we recognize that federal court decisions are not binding on this Court, we are able to adopt their analysis as it appeals to our reason." **Kleban v. Nat. Union Fire Ins. Co. of Pittsburgh**, 771 A.2d 39, 43 (Pa. Super. 2001) (citation omitted).

In **Conyers v. Easley**, 2019 WL 9094724 (C.P. Lehigh Cnty. Sep. 6, 2019), the Lehigh County Court of Common Pleas rejected a claim that the plaintiff "could not have brought her personal injury claim before the [MDJ] because the damages she allegedly sustained exceeded the $12,000.00 damages cap." **Conyers**, 2019 WL 9094724, at *3. The court concluded, "While plaintiff has pled damages in excess of $12,000.00 in the within matter, she was not **precluded** from seeking damages for personal injuries in the action she pursued before the [MDJ]." **Id.** (emphasis in original). We find the reasoning in **Crosley** and **Conyers** persuasive.

Here, Appellants presented their defense that JR Beard did substandard work in the MDJ Action, which the MDJ "necessarily" accepted by entering judgment in Appellants' favor. As the trial court explained, Appellants could have claimed damages in the MDJ Action.[5] Their' actions indicate they were dissatisfied with or unaware of their options. Accordingly, we agree that Appellants claims either were or could have been asserted in the MDJ Action. **See Rothwell v. Groff**, 72 A.2d 72 (Pa. 1950) (where landlord obtained eviction of tenant from a justice of the peace, and tenant failed to either seek *certiorari* to the court of common pleas or appeal the eviction, tenant's

---

[5] Appellants imply they did not have a full and fair opportunity to litigate in the MDJ Action because they were *pro se*. Appellants' Brief at 6. We have long held that "a layperson choosing to represent himself in a legal proceeding to a reasonable extent assumes the risk that his lack of legal training will place him at a disadvantage." **Commonwealth v. Ray**, 134 A.3d 1109, 1114-15 (Pa. Super. 2016) (citations omitted).

subsequent action for damages against the landlord was barred). For the above reasons, we affirm the trial court's entry of summary judgment in favor of JR Beard.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/29/2023